# HENRY LESCHEN, Appellant, v. BENJAMIN BRAZELLE, Respondent.

### St. Louis Court of Appeals, March 5, 1912.

1. **EVIDENCE: Carbon Copy.** A carbon copy of a document, made at the same time as and by the impressions that produced the original, is competent evidence in any case in which the original would be competent.

2. **WITNESSES: Attorney and Client: Privileged Communications.** Where a carbon copy of an application for a patent is in the hands of the inventor's attorney, it is privileged, and the attorney cannot be compelled to produce it.

3. ————: ————: ————: **Producing Documents Committed to Attorney.** In a suit for specific performance of a contract to convey a half interest in a patent, plaintiff applied for an order requiring defendant (the patentee) to produce the application for the patent. It appearing that the original application was on file in the patent office, the court made an order, under sections 1944 and 1945, Revised Statutes 1909, requiring defendant to produce a copy of the application, for use in the case. This defendant declined to do, because the copy was in the possession of his attorney and not in his own possession, and he objected to the attorney's producing it because it was privileged. The attorney laid no claim to the paper, nor objected to producing it on his own account, but was willing to furnish it to his client on his request. *Held*, that it was not material that the attorney owned the paper on which the copy of the application was written, and, the copy not being privileged in the hands of defendant, it could not be made privileged by defendant's placing it in the possession of his counsel, and hence an order requiring defendant to recall the copy from his counsel and to then produce it was proper.

Appeal from St. Louis City Circuit Court.—*Hon. Hugo Muench*, Judge.

AFFIRMED.

*Julian Laughlin* and *A. R. Russell* for appellant.

*Jones, Jones, Hocker & Davis* for respondent.

NORTONI, J.—This is a suit in equity for the specific performance of a contract and injunctive relief. It appears defendant is an inventor, and in 1907 plaintiff entered into a contract with him touching a new style internal combustion engine, the invention and patenting of which defendant then had in mind. By the terms of the contract plaintiff was to furnish defendant certain financial aid toward perfecting and patenting the invention, and for this consideration defendant agreed to assign plaintiff one-half interest therein, when completed. The suit declares upon this contract, and prays that defendant be required to specifically perform it by investing plaintiff with one-half interest in two certain patents upon the engine and improvement thereon, Nos. 520,084 and 572,235, and for an injunction restraining defendant from assigning an interest therein to another.

By his answer, defendant admits the arrangement with plaintiff in the first instance, but avers that plaintiff subsequently voluntarily withdrew therefrom and refused to furnish the financial aid agreed upon. It is averred, too, therein that after plaintiff withdrew from the enterprise defendant perfected an internal combustion engine, which was salable, and applied for a patent thereon; that this engine is a success, but that plaintiff is wholly without interest therein for the reason he had long since abandoned his undertaking and refused to furnish the financial aid essential to complete the task in accordance with his agreement. But plaintiff insists that the engine finally perfected as a salable one and known in the record as engine No. 3 is in its fundamental principle identical in all respects with the original, for the development of which he furnished the means, and, therefore, he is entitled to an interest therein. On the issue thus made, it became material and was important to investigate and ascertain the truth with respect to the fundamental principle of the several engines men-

tioned. It appears that on the engine known in the record as No. 3, which was finally perfected by defendant as a salable one, at patent had been allowed under the act of Congress, but for some reason not yet issued. Defendant produced a copy of the application No. 520084 for the patent on the engines known as Nos. 1 and 2 in the record.

To the end of showing the identity of the several engines, plaintiff sought to have defendant produce the application for patent No. 572235 containing a full description of the perfected engine known as No. 3. This defendant declined to do, and it being shown that the original of the application was on file in the patent office at Washington, the court thereupon made an order under Secs. 1944, 1945, R. S. 1909, to the effect that defendant produce a copy of such application for use in the case. The copy of the application referred to is admitted to be a carbon copy and shown to have been made at the same time and by the same impressions that produced the original application. It is the accepted rule of decision that such copies may be received in evidence in any case or on any question in which the original writing or print is competent and proper. [See Bond v. Sanford, 134 Mo. App. 477, 114 S. W. 570; Wright v. Chicago, etc., R. Co., 118 Mo. App. 392, 94 S. W. 555.] But this is unimportant here, for the parties have stipulated that the order of the court made on defendant to produce was proper enough unless he was relieved from the duty of complying therewith because of the question of privilege, which he raised. Indeed, this question of privilege is the only matter for our consideration and the facts concerning it are as follows: It is shown, and the case concedes, that the copy of the application for a patent, so ordered to be produced, was in the possession of Mr. Carr, defendant's attorney, who had charge of procuring the patent. Defendant de-

clined to produce the carbon copy of the application
for the reason it was not in his possession and ob-
jected to his counsel's producing it because of the
privilege which obtains as to communications between
attorney and client.  There can be no doubt that Mr.
Carr, defendant's attorney, who has the carbon copy
of the application in his possession, could not be com-
pelled to produce it, for the reason that the privilege
incident to that relation forbids that its sanctity shall
be so invaded.  [See 1 Greenleaf on Evidence (16
Ed.), sec. 237; State v. Dawson, 90 Mo. 149, 1 S. W.
827.]  But there is no attempt here to enforce the pro-
duction of a copy of the application by defendant's
attorney, Mr. Carr, for the order of the court is di-
rected to defendant in person, and it is conceded that
if the application were in his possession he should
produce it.  But it is argued by defendant that though
the carbon copy of the application in the possession of
Mr. Carr, his counsel, contains information touching
his patent and within his dominion, the *paper* on which
such information is written belongs to the attorney,
Mr. Carr, and, therefore, he has no right to produce
it.  Though the paper on which the carbon impressions
of the original application were made belongs to the
attorney, Mr. Carr, as insisted by defendant, the ar-
gument advanced is without substance, for Mr. Carr
in no respect lays claim to the paper or objects to its
production on that score.  The privilege involved here
and that which is invoked to the end of preventing the
production of the copy of the application for consid-
eration in evidence is a privilege which the law af-
fcrds in favor of defendant as client and not in favor
of Mr. Carr, the attorney.  [See 1 Greenleaf on Evi-
dence (16 Ed.), secs. 239, 243.]  For instance, if de-
fendant here or the client may be required to produce
the paper, then his attorney may be required to do
likewise though an objection on the grounds of privi-
lege is interposed.  [Fenwick v. Reed, 1 Merivale's

Rep. 113.] But, however this may be, defendant's attorney, Mr. Carr, claims no privilege whatever on his own account nor does he interpose any objection to furnishing the defendant a copy of the application in his possession on the score that he owns the paper on which the impressions are indited. The matter of the ownership of the paper on which the carbon impressions exist, though put forward by defendant, is but a pretext of shadowy form without substance whatever and should not be regarded in a court of justice when the question in judgment relates alone to a privilege touching the information admitted to be that of defendant contained in and revealed by the paper. Indeed, the record before us concedes that Mr. Carr, defendant's attorney, expresses a willingness to furnish defendant the copy of the application called for upon his request and in no sense asserts his ownership in the paper against the right of defendant to have it. In other words, it is expressly admitted that Mr. Carr has never been requested by defendant to furnish him a copy of the application; that he is perfectly willing to do so and that he withholds it for no other reason than because it has not been requested of him by defendant either before or pending the controversy over the question of privilege. Obviously, on this showing, defendant should be required to obtain possession of the copy of the application and produce it in the case. For no one can doubt that if documents are not privileged while in the hands of a party to the suit, he does not make them privileged by placing them in the possession of his counsel. In such circumstances no doubt the attorney may properly enough refuse to produce the writing, but the client who is party to the suit cannot do so merely because he is prepared to say that he has shown or has delivered them to his attorney. On this question we fully concur in the views expressed in Edison Elect. L. Co. v. U. S. Elect. L. Co., 44 Fed. 294.

The judgment requiring defendant to obtain or call back from his counsel the copy of the application and produce it at the trial should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Caulfield, J.,* concur.