**In the Matter of Laurence SEMEL, Bankrupt.**

**Laurence Semel, Appellant.**

**No. 17578.**

United States Court of Appeals
Third Circuit.

Argued April 10, 1969.

Decided May 21, 1969.

Laurence Semel, Lyndhurst, N. J., pro se.

Robert Wasserman, Newark, N. J., for appellee.

Myron S. Lehman, Newark, N. J., on the brief, for trustee.

Before HASTIE, Chief Judge, and GANEY and VAN DUSEN, Circuit Judges.

## OPINION OF THE COURT

GANEY, Circuit Judge.

This case involves a bankrupt's appeal from an order of the District Court denying his petition for review of an order of the referee. In the statement of all the property of the bankrupt accompanying his voluntary petition in bankruptcy, Laurence Semel, Esquire, licensed to practice law in New Jersey, stated that no debts were due him on open account, but that an amount estimated at $100 is due him for "Possible claims for professional services rendered, damages, possible contingent fees on legal matters heretofore handled, costs and disbursements advanced for clients."

At the first meeting of creditors,[1] held twenty days after the petition was filed, the bankrupt, who acted as his own counsel, testified that many people owed him money, probably in excess of a quarter of a million dollars. When asked why he did not list that amount in the schedules, he replied that the sum represented miscellaneous claims for prior legal services and monies that he loaned to a number of people over the past thirty-eight years. And in response to the question why he did not list the names of these people in his schedules, he stated that the $100 item covered those amounts. At a Section 21a hearing (11 U.S.C.A. § 44(a)), held twenty-eight days later, the bankrupt gave as his reason for writing "None" under the heading "Debts due petitioner on open account", his belief that the amounts, estimated by him at more than a quarter of a million dollars, owed him had no value to the bankrupt's estate. He also said that he did not have a list of the names, but that he had files going back for many years. When the attorney for the trustee advised him that he was going to ask him to make a list of the people who owed him that money, the bankrupt said that he would refuse because it was not his duty to do so. The referee then orally directed him to furnish a list.

The following day the referee issued a written order. The order, after stating that the bankrupt had testified concerning "accounts receivable", directed the bankrupt to "prepare a list of accounts which total, in accordance with the bankrupt's testimony, $250,000.00, said list to include name, address, amount and how said debt arose", to "prepare a list of all pending cases which he may have in his law practice and set forth the fees which were due from said cases at the time of the petition in bankruptcy", and that he furnish the lists within thirty days from the making of the order.

The bankrupt's first complaint that the referee's order is unlawful because he was not given notice of the application for the order is without merit. The informing him by the attorney for the trustee that he was going to request him to make a list was sufficient notice

[1] Pursuant to § 7a(10) of the Bankruptcy Act, 11 U.S.C.A. § 25a(10).

to him of the written order which followed. He is not harmed by the fact that it omitted to recite that he was given notice of the application for the order as required by General Order 23.

He claims that he is not required to set forth in the schedules the debts owed to him for two reasons: (1) the costs of the effort to recover them will exceed their worth, and (2) the trustee's contact of the people, some of whom were or are clients of his, as a result of his revealing their names and addresses, will harm his reputation as a lawyer, and that the practice of law is the only asset he has left.

■■■ The general contents of a petition in bankruptcy should comply with the provisions of the Bankruptcy Act, General Orders, and official forms of the Supreme Court. Collectively,. they require the petitioner to make the fullest disclosure of his assets as well as his liabilities. In re Breitling, 133 F. 146 (7 Cir.1904); 1 Collier on Bankruptcy (14th Ed.) ¶¶ 7.08, 7.11. A petitioner may not seek the benefits of the Bankruptcy Act and at the same time be allowed to refuse to furnish a complete and accurate schedule of his assets. In re Thomas, 204 F.2d 788, 794 (C.A.8, 1953); Hudson v. Wylie, 242 F.2d 435, 452 (C.A.9, 1957). And 't is not unusual to require a report of certain items even though they cannot be used by the trustee. The requirement of full reporting in good faith of all assets of the bankrupt is not the equivalent, as the bankrupt maintains, of shifting from the trustee to him the duty to collect, care for and preserve the property of the bankrupt's estate. The responsibility for determining whether "property interests" or "choses in action" are of value to the bankrupt's estate is placed upon the trustee and not the petitioner. In re Hannan, 127 F.2d 894, 897 (7 Cir. 1942).

■■■ Whether his reputation will be harmed is problematic. But even if it will be, aside from the fact that this is a consideration which the bankrupt should have weighed in the balance before he decided to file his petition, embarrassment or loss of reputation from publicity of the bankruptcy proceedings will not excuse full disclosure.

There is nothing in the record to support his contention that he was not given an opportunity during or after his examination at the hearings to explain or clarify, in lieu of cross-examination, any testimony given by him about the quarter-of-a-million-dollar item.

■■■ The bankrupt also urges that he is not required to list cases pending in his office because information about such matters involves privileged communications between him and his clients. All fees and commissions earned and accrued prior to bankruptcy, or relating to services already performed, even though they may be paid thereafter, are assets of the bankrupt estate. Parkford v. C. I.R., 133 F.2d 249, 146 A.L.R. 57 (9 Cir.1943), cert. denied 319 U.S. 741; In re Austin, 42 F.Supp. 889 (E.D. N.Y., 1942); 4A Collier on Bankruptcy (14 Ed.) ¶ 70.34. In the absence of unusual circumstances, the fact of a retainer, the identity of the client, the conditions of employment and the amount of the fee do not come within the privilege of the attorney-client relationship. Mauch v. C. I. R., 113 F.2d 555 (3 Cir.1940); United States v. Pape, 144 F.2d 778, 782–783 (2 Cir. 1944); Colton v. United States, 306 F.2d 633 (C.A.2, 1962); Wirtz v. Fowler, 372 F.2d 315, 332–333 (C.A.5, 1966); In re Wasserman, 198 F.Supp. 564 (D.C.D.C.1961). The determination that the facts relating to a particular retainer comes within the privilege is to be made by the referee in the first instance. Presently, there is nothing in the record upon which such a determination can be made. The mere assertion of an attorney-client relationship is not enough. It may turn out that in some of the cases the bankrupt has earned nothing at the time of the filing of his petition. See, for example, In re Coleman, 87 F.2d 753 (2 Cir. 1937). But here again the responsibility for that determination is upon the trustee. The

bankrupt must supply the information even though it may be of no value to the bankrupt's estate.

We have considered the other points raised by the bankrupt and do not think they merit discussion here.

 The District Court had jurisdiction over the petition for review. It was timely filed and there were no procedural irregularities. Therefore, we interpret the Court's dismissal of the petition as confirming the order of the referee.[2] As interpreted, the order will be affirmed.

---

2. The courts of bankruptcy are invested with authority to "Consider records, findings, and orders certified to the judges by referees, and confirm, modify, or reverse such findings and orders, or return such records with instructions for further proceedings;" See § 2a(10) of the Bankruptcy Act, 11 U.S.C.A. § 11a(10). Also see General Order 47.

